**Andreis v. The Selected Risks Insurance Company**

*Clark A. Mitchell*, for plaintiff.
*John T. Olshock,* for defendant.

RODGERS, *J.,* December 8, 1980—Plaintiff, Harry J. Andreis, has brought an action in as-

sumpsit against defendant, The Selected Risks Insurance Company, for recovery of the sum of $6,320, together with interest, arising out of the theft of the insured automobile on June 30, 1979. Defendant-insurance carrier has refused payment on the grounds that plaintiff was not the owner of the vehicle at the time of the theft, had no insurable interest therein, and was not a bona fide purchaser.

For reasons stated, the court finds for plaintiff, Harry J. Andreis, and against defendant, The Selected Risks Insurance Company, in the amount of $6,320, together with legal interest.

Andreis, a resident of Cecil Township, Washington County, Pa., purchased a 1978 model used Jeep automobile from Dwayne Kemp, t/a Canonsburg Auto Mart, a used car dealer at 503 First Street, Canonsburg, Pa., on or about October 18, 1978, for the purchase price of $7,270. Andreis traded in his Plymouth Duster on the Jeep for a trade-in value of $1,500 and paid Kemp the balance in cash on October 18, 1978. Andreis and Kemp also applied for a temporary registration plate certificate with the Commonwealth and for a transfer of the registration plates from the Plymouth to the Jeep. Andreis also notified his insurance agent, the Gaitens Agency at McDonald, Pa., who added the Jeep to Andreis' auto policy with defendant-insurance carrier. Andreis, on November 13, 1978, paid defendant, through Gaitens, an additional auto insurance premium in the amount of $147 on account of the addition of the Jeep to his policy; on January 15, 1979 Andreis paid to defendant-carrier, via Gaitens, a total insurance premium, for the six month period beginning January 20, 1979, of $488, of which amount $310 was insurance on the Jeep automobile.

754

Prior to October 18, 1978 one Robert Elstrodt had entrusted possession of the Jeep to Kemp for the purpose of sale, at which time the certificate of title to the vehicle held by the General Motors Acceptance Corporation had an encumbrance noted in favor of G.M.A.C.

After purchasing the Jeep from Kemp, Andreis repeatedly attempted to secure a certificate of title from him without success. At the time Andreis purchased the vehicle from Kemp, at Kemp's place of business, plaintiff was a buyer in the ordinary course of business and a bona fide purchaser without knowledge of any facts that made him aware, or should have made him aware, of the interest of Elstrodt and G.M.A.C.

On June 30, 1979, at about 4:00 p.m., the Jeep in question was stolen by persons unknown and the theft was promptly reported to the Bethel Park Police Department on the same date, but the Jeep has never been recovered. On or about July 22, 1979 plaintiff, Andreis, filed in writing an affidavit of vehicle theft, being proof of loss, but defendant-insurance carrier demanded that Andreis furnish it with a certificate of title, and later declined to make any payments on the grounds that Andreis had no insurable interest and was not a bona fide purchaser.

In the interim, Andreis, together with numerous other victims of Dwayne Kemp, prosecuted Kemp criminally. Kemp pleaded no defense and was ordered to make restitution, but to date the plaintiff has received no moneys from Kemp.

The court finds that at the time plaintiff, Andreis, parted with over $7,000 for the purchase of this vehicle he had no reason to believe that Kemp, a used car dealer, would be unable to furnish him

with a certificate of title. Although Andreis admitted that after the purchase he became aware of Kemp's unsavory reputation as a dealer in used vehicles, the court finds that by a preponderance of the evidence Andreis had no such knowledge prior to the purchase.

Defendant-insurance carrier did not require plaintiff to produce a certificate of title either as a condition precedent or condition subsequent to the issuance of its policy. Cf. Thomas v. Chesapeake Life Ins. Co., 226 Pa. Superior Ct. 360, 313 A. 2d 332 (1973). It collected substantial premiums from plaintiff, covering a period of nine months, and made no inquiry concerning this certificate of title until after the vehicle was stolen and the insured requested payment for his loss.

Regardless of the merits of the dispute between Elstrodt and G.M.A.C. on the one hand and Andreis on the other, cf. Carr. v. Keller, 74 D. & C. 2d 534 (1976): Bozzo v. Key Mobile Homes, 8 D. & C. 3rd 507 (1978), with Sterling Acceptance Co. v. Grimes, 194 Pa. Superior Ct. 503, 168 A. 2d 600 (1961), plaintiff, Andreis, took out his insurance here in good faith and under a reasonable and honest belief that he owned the vehicle in question, and he did not withhold any facts in bad faith at the time he insured the vehicle.

In the case of The Monroe County Mutual Insurance Co. v. Robinson, 25 Pitts. L.J. 177, 5 W.N.C. 389 (1878), plaintiff built a home in good faith on land which he believed he owned. He took out fire insurance on the building the same date he was served with a writ of ejectment by an adjoining property owner. About two years later the building was destroyed by fire, and subsequently in the ejectment action it was determined that plaintiff

had indeed built his house on land that he did not own. Upholding a judgment for plaintiff against the insurance company, the court said that plaintiff entered on the land and took his insurance upon his building and stock of goods in good faith and under a reasonable and honest belief that he had title and withheld no facts material to the risk.

The jurisdictions are divided on whether a person who innocently acquires possession and apparent ownership of a motor vehicle, which had previously been stolen, has an insurable interest sufficient to recover under a policy assuring him against injury or loss of the vehicle from theft: Anno., Insurable Interest in Stolen Motor Vehicle, 33 A.L.R. 3rd 1417 (1970). The vehicle in this case had not been stolen by Kemp. Indeed, Elstrodt had entrusted the automobile to Kemp for the purpose of sale. Nor is there any question that plaintiff, Andreis, has suffered a substantial loss by reason of the theft of this vehicle on June 30, 1979. The policy as issued does not require the insured to have in his possession a certificate of title, nor is there any requirement that such certificate of title be furnished before the insurance carrier is required to pay the loss. It is, of course, well settled that a certificate of title is not conclusive evidence of motor vehicle ownership: Speck Cadillac-Olds, Inc. v. Goodman, 373 Pa. 83, 95 A. 2d 191 (1953); Carr v. Keller, supra.

Defendant did not dispute that it had appraised the insured's loss in the amount of $6,320.

## DECISION OF THE COURT

And now, December 8, 1980, the court finds for plaintiff, Harry J. Andreis, and against defendant, The Selected Risks Insurance Company, in the amount of $6,320, together with legal interest at the rate of six percent from September 1, 1979.